UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

PICHANDA POK and VANN PHOU,            NO. CIV. 2:09-2385 WBS EFB

          Plaintiffs,                  MEMORANDUM AND ORDER RE:
                                       MOTION TO DISMISS
     v.

AMERICAN HOME MORTGAGE
SERVICING, INC., AMERICAN
BROKERS CONDUIT, POWER DEFAULT
SERVICES, INC., MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC., INNOVIA
ESTATES, DESIREE FORD, JOSEPH
HAI DINH, and DOES 1 through
20, inclusive,

          Defendants.
_____/

----oo0oo----

          Plaintiffs Pichanda Pok and Vann Phou filed this action

against defendants American Home Mortgage Servicing, Inc.

("AHMSI"), American Brokers Conduit, Power Default Services, Inc.

("Power Default"), Mortgage Electronic Registration Systems, Inc.

("MERS"), Innovia Estates, Desiree Ford, and Joseph Hai Dinh

alleging various state and federal claims relating to a loan they

obtained to refinance their home in Stockton, California.  AHMSI,

1

Power Default, and MERS move to dismiss plaintiffs' First Amended
Complaint ("FAC") pursuant to Federal Rule of Civil Procedure
12(b)(6) for failure to state a claim upon which relief can be
granted.

I.   Factual and Procedural Background

On September 12, 2006, plaintiffs obtained a loan from
American Brokers Conduit to refinance their home, located at
10022 Ornella Drive, Stockton, California.  (FAC ¶¶ 6, 37.)  This
loan was memorialized in a Promissory Note ("the Note") secured
by a Deed of Trust on the property.  (Id. ¶ 37.)  Plaintiffs
claim that they were channeled into this allegedly unaffordable
loan through the conduct of their mortgage broker Ford, who
allegedly told plaintiffs they could only qualify for a "sub-
prime" loan when in fact they qualified for a "prime" loan with
better terms.  (Id. ¶¶ 29-31.)  The Deed of Trust listed First
Alliance Title as trustee, American Brokers Conduit as lender,
and MERS as nominee and beneficiary for the lender and lender's
successors and assigns.  (Id. ¶¶ 37-38.)  MERS facilitates the
transfer of mortgage interests by providing an electronic
tracking system for the mortgage interests registered in its
system.[1]  To do this, MERS is the beneficiary of record in a

---

[1]   Plaintiffs' Opposition argues that MERS is not licensed
to conduct business in California.  However, MERS is statutorily
exempted from the requirement to obtain a certificate of
qualification to conduct business in California.  MERS registered
as a Delaware corporation, which is a foreign corporation under
California law.  Cal. Corp. Code §§ 167, 171.  MERS is not
required to obtain a certificate of qualification from the
Secretary of State because it does not "transact intrastate
business" within the meaning of the statute.  See Lomboy v. SCME
Mortgage Bankers, No. C-091160 SC, 2009 WL 1457738, at *3 (N.D.
Cal. May 26, 2009).

1  "nominee" capacity for the mortgage lender on all security

2  instruments in its system. (<u>Id.</u> ¶ 11.)

3        Plaintiffs eventually defaulted on their loan, and a

4  Notice of Default and Election to Sell Under Deed of Trust was

5  filed in San Joaquin County by Power Default on February 26,

6  2009. (<u>Id.</u> ¶ 40.)  On May 27, 2009, plaintiffs allegedly sent a

7  Qualified Written Request ("QWR") under the Real Estate

8  Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, to

9  AHMSI that included a demand to rescind their loan under the

10  Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f.  (<u>Id.</u> ¶

11  43.)  On July 29, 2009, MERS, as nominee for Alliance Title,

12  allegedly substituted Power Default as trustee under the Deed of

13  Trust.  (<u>Id.</u> ¶ 41.)  On August 24, 2009, Power Default allegedly

14  noticed the trustee sale of the property.  (<u>Id.</u> ¶ 42.)  This

15  notice identified Power Default as the trustee under the Deed of

16  Trust.  (<u>Id.</u>)

17        In their FAC, plaintiffs assert ten causes of action

18  against seven defendants.  AHMSI, Power Default, and MERS move to

19  dismiss only those causes of action alleged against them.

20  Plaintiffs did not oppose the motion until January 14, 2010,

21  almost two weeks past the deadline for the submission of an

22  opposition pursuant to Local Rule 230(c).  Although the court

23  will consider plaintiffs' Opposition, the hearing date of January

24  19, 2010 is VACATED pursuant to Local Rule 230(c), and the court

25  will take defendants' motion to dismiss under submission without

26  oral argument due to plaintiffs' late filing.

27  II. <u>Discussion</u>

28        On a motion to dismiss, the court must accept the

allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds by</u> <u>Davis v. Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 556-57).

In general a court may not consider items outside the pleadings upon deciding a motion to dismiss, but may consider items of which it can take judicial notice. <u>Barron v. Reich</u>, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

In support of their motion to dismiss, AHMSI, Power Default, and MERS submitted a Request for Judicial Notice of two exhibits, a copy of the Deed of Trust, recorded in San Joaquin County and a Notice of Trustee's Sale, recorded in San Joaquin County. (Docket No. 22.) Plaintiffs also submitted a Request

4

1   for Judicial Notice of one unpublished article entitled

2   "Foreclosure, Subprime Mortgage Lending, and the Mortgage

3   Electronic Registration System."  The court will take judicial

4   notice of defendants' exhibits, since they are matters of public

5   record whose accuracy cannot be questioned.  <u>See</u> <u>Lee v. City of</u>

6   <u>Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001).  However, the

7   court denies plaintiffs' request, as the document in question is

8   an unpublished article expressing an individual opinion that can

9   be questioned.

10      A.   <u>California Rosenthal Fair Debt Collection Practices Act</u>

11           Plaintiffs' second cause of action alleges that

12   defendant AHMSI violated the Rosenthal Fair Debt Collection

13   Practices Act ("RFDCPA"), Cal. Civ. Code § 1788.2.  The RFDCPA

14   prohibits a host of unfair and oppressive methods of collecting

15   debt, but to be liable under the RFDCPA a defendant must fall

16   under its definition of "debt collector."  <u>Izenberg v. ETS Svcs.,</u>

17   <u>LLC</u>, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008).  A "debt

18   collector" under the RFDCPA is "any person who, in the ordinary

19   course of business, regularly, on behalf of himself or herself or

20   others, engages in debt collection."  Cal. Civ. Code § 1788.2(c)

21   (2008).

22           Plaintiffs fail to allege facts that would support the

23   inference that AHMSI is a "debt collector" under the RFDCPA.

24   Instead, the FAC contains only a conclusory restatement of the

25   definition of "debt collector" under the RFDCPA, (FAC ¶ 77.), and

26   fails to allege other essential elements of the statute necessary

27   to establish liability as a "debt collector," namely that the

28   deed of trust memorializes a "consumer credit transaction" and

5

1  that the amount owed under the deed of trust is a "consumer debt"

2  according to the RFDCPA.  See Cal. Civ. Code § 1788.2(b)-(f).

3  Such broad allegations, without even identifying what part of the

4  RFDCPA AHMSI violated, are insufficient to survive a motion to

5  dismiss.  See Rosal v. First Fed. Bank of Cal., No. 09-1276, 2009

6  WL 2136777, at * 18 (N.D. Cal. July 15, 2009).

7           Additionally, foreclosure pursuant to a deed of trust

8  does not constitute debt collection under the RFDCPA.  See

9  Izenberg, 589 F. Supp. 2d at 1199; see also Rosal, 2009 WL

10 2136777, at *18 (dismissing RFDCPA claim as to all defendants in

11 foreclosure case); Ricon v. Recontrust Co., No. 09-937, 2009 WL

12 2407396, at *4 (S.D. Cal. Aug. 4, 2009) (dismissing with

13 prejudice plaintiff's unfair debt collection claims in

14 foreclosure case); Pittman v. Barclays Capital Real Estate, Inc.,

15 No. 09-0241, 2009 WL 1108889, at *3 (S.D. Cal. Apr. 24, 2009)

16 (dismissing with prejudice plaintiff's Rosenthal Act claim in

17 foreclosure case because a "residential mortgage loan does not

18 qualify as a 'debt' under the statute"); Gallegos v. Recontrust

19 Co., No. 08-2245, 2009 WL 215406, at *3 (S.D. Cal. Jan. 28, 2009)

20 (dismissing RFDCPA claim in foreclosure case).  Since residential

21 mortgage loans to not fall within the RFDCPA, the court must

22 grant AHMSI's motion to dismiss plaintiffs' cause of action for

23 violations of the RFDCPA.

24      B.   Negligence

25           To prove a cause of action for negligence, a plaintiff

26 must show "(1) a legal duty to use reasonable care; (2) breach of

27 that duty, and (3) proximate [or legal] cause between the breach

28 and (4) the plaintiff's injury."  Mendoza v. City of Los Angeles,

66 Cal. App. 4th 1333, 1339 (1998) (citation omitted).  "The
existence of a legal duty to use reasonable care in a particular
factual situation is a question of law for the court to decide."
Vasquez v. Residential Invs., Inc., 118 Cal. App. 4th 269, 278
(2004).

Plaintiffs allege that MERS owed them a duty to
"perform its administrative function recording,[sic] maintaining,
and transferring documents as it relates to [p]laintiffs' loan in
a manner not to cause [p]laintiffs harm."  (FAC ¶ 89.)
Plaintiffs further contend that MERS breached this duty when "it
failed to receive, maintain or transfer the negotiable instrument
related to [p]laintiffs' loan, and authorized others to collect
payments on [p]laintiffs' mortgage and commence foreclosure
proceedings." (Id.)  Plaintiffs cite no authority for the
proposition that MERS owed a duty to not cause plaintiff harm in
its capacity the nominal beneficiary for the loan.  Absent
contrary authority, a pleading of an assumption of duty by MERS,
or a special relationship, plaintiffs cannot establish MERS owed
a duty of care.  See Hardy v. Indymac Fed. Bank, --- F.R.D. ---,
No. CV F 09-935 LJO SMS, 2009 WL 2985446, at *7 (E.D. Cal. Sept.
15, 2009); Bentham v. Aurora Loan Servs., No. C-09-2059 SC, 2009
WL 2880232, at *2-3 (N.D. Cal. Sept. 1, 2009).  As the listed
nominee and beneficiary under the Deed of Trust, MERS had
authority to assign its beneficial interest to another party.
See Cal. Civ. Code § 1934 ("Any assignment of a mortgage and any
assignment of the beneficial interest under a deed of trust may
be recorded, and from the time the same is filed for record
operates as constructive notice of the contents thereof to all

7

1   persons.”); <u>Bentham</u>, 2009 WL 2880232 at *3.

2       Additionally, the FAC alleges that AHMSI owed

3   plaintiffs a duty of care that was breached when ASMI “took

4   payments to which they were not entitled, charged fees they were

5   not entitled to charge, and wrongfully made or otherwise

6   authorized negative reporting of [p]laintiffs’ creditworthiness

7   to various credit bureaus.” (FAC ¶ 88.)  However, loan servicers

8   do not owe a duty to the borrowers of the loans they service.

9   <u>See</u> <u>Watts v. Decision One Mortg. Co.</u>, No. 09-43 2009 U.S. Dist.

10  LEXIS 59694 (S.D. Cal. July 13, 2009); <u>Marks v. Ocwen Loan</u>

11  <u>Servicing</u>, No. 07-2133, 2009 WL 975792, at *7 (N.D. Cal. Apr. 10,

12  2009) (“[A] loan servicer does not owe a fiduciary duty to a

13  borrower beyond the duties set forth in the loan contract.”)

14  Plaintiffs have alleged that AHMSI was the servicer of their loan

15  (FAC ¶ 8.) and accordingly cannot demonstrate that AHMSI owed

16  plaintiffs a duty of care outside of the terms of the loan

17  contract.

18       Power Default is not so much as mentioned by name in

19  plaintiffs’ negligence claim.  Power Default should not be forced

20  to guess how their conduct was allegedly negligent.  <u>See</u>

21  <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council</u>

22  <u>of Carpenters</u>, 459 U.S. 519, 526 (1983); <u>Gauvin v. Trombatore</u>,

23  682 F. Supp. 1067, 1071 (N.D. Cal. 1988).  The FAC fails to state

24  that MERS, AHMSI, or Power Default have breached a cognizable

25  legal duty, and accordingly the court will grant defendants’

26  motions to dismiss plaintiffs’ cause of action for negligence

27  against MERS, AHMSI, and Power Default.

28       C.   <u>Real Estate Settlement Procedures Act</u>

1    RESPA requires that borrowers must be provided certain

2  disclosures relating to the mortgage loan settlement process.

3  See 12 U.S.C. § 2601.  Section 2605 of RESPA relates to the

4  disclosures and communications required regarding the servicing

5  of mortgage loans, and provides that loan servicers have a duty

6  to respond to QWRs from borrowers asking for information relating

7  to the servicing of their loan.  See 12 U.S.C. § 2605(e).  Under

8  RESPA lenders of federally related mortgage loans must disclose

9  whether servicing of a loan may be assigned, sold or transferred

10 to loan applicants.  12 U.S.C. § 2605(a).  Additionally,

11 borrowers may send QWRs under RESPA to loan servicers for

12 information relating to the servicing of their loan.  12 U.S.C. §

13 26055(e)(1).  Loan servicers have 60 days after the receipt of a

14 QWR to respond to the borrower inquiry.  12 U.S.C. § 2605(e)(2).

15    Plaintiffs have alleged sufficient facts to indicate

16 that they sent AHMSI a valid QWR under RESPA.  Specifically,

17 plaintiffs allege that they sent AHMSI a QWR on May 27, 2009,

18 which identified plaintiffs' name, loan number, and stated the

19 reasons they believed their account was in error.  (FAC ¶¶ 43,

20 96.)  This information is all that is required to submit a valid

21 QWR under RESPA.  See 12 U.S.C. § 2605(e)(1)(B).  Plaintiffs have

22 also indicated the specific provisions of RESPA they believe

23 AHMSI violated.  (See id. ¶¶ 96, 98-100.)  These averments are

24 sufficient to put AHMSI on notice of the wrongs it allegedly

25 committed, and therefore are sufficient at this preliminary

26 stage.  See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d

27 1097, 1103 (9th Cir. 2008).

28    Plaintiff must, however, allege actual harm to survive

9

a motion to dismiss.[2]  Section 2605(f) imposes liability on

servicers that violate RESPA and fail to make the required

disclosures.  12 U.S.C. § 2605(f).  Although this section does

not explicitly make a showing of damages part of the pleading

standard, "a number of courts have read the statute as requiring

a showing of pecuniary damages in order to state a claim." <u>Allen</u>

<u>v. United Financial Mortg. Corp.</u>, 2009 WL 2984170, at *5 (N.D.

Cal. Sept. 15, 2009).  For example, in <u>Hutchinson v. Del. Sav.</u>

<u>Bank FSB</u>, the court stated that "alleging a breach of RESPA

duties alone does not state a claim under RESPA.  Plaintiff must,

at a minimum, also allege that the breach resulted in actual

damages."  410 F. Supp. 2d 374, 383 (D.N.J. 2006).  This pleading

requirement has the effect of limiting the cause of action to

circumstances in which plaintiffs can show that a failure to

respond or give notice has caused them actual harm.  <u>See</u> <u>Singh v.</u>

<u>Wash. Mut. Bank</u>, No. 09-2771, 2009 U.S. Dist. LEXIS 73315, *16,

2009 WL 2588885 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim

because, "[i]n particular, plaintiffs have failed to allege any

facts in support of their conclusory allegation that as a result

of defendants' failure to respond, defendants are liable for

actual damages, costs, and attorney fees") (quotation marks and

citation omitted).  Courts, however, "have interpreted this

<hr>

[2]   Defendants' argument that plaintiff must allege the ability to tender the proceeds of the loan to sustain their RESPA claim is incorrect, because plaintiffs only request damages for their RESPA claim and do not ask for equitable relief or that the court set aside the foreclosure sale.  <u>See</u> <u>Yamamoto v. Bank of N.Y.</u>, 329 F. 3d 1167, 1170 (9th Cir. 2003); <u>Arnolds Mgmt. Corp. v. Eischen</u>, 158 Cal. App. 3d 575, 578-79 (1984).  While plaintiffs' other equitable claims may require a showing of tender, their RESPA claim is solely based in law.

1  requirement liberally." <u>Yulaeva v. Greenpoint Mortg. Funding,</u>

2  <u>Inc.</u>, No. 09-1504, 2009 WL 2990393, at *15 (E.D. Cal. Sept. 9,

3  2009) (Karlton, J.).  For example, in <u>Hutchinson</u>, plaintiffs were

4  able to plead such a loss by claiming that they had suffered

5  negative credit ratings as a result of violations of RESPA,  410

6  F. Supp. 2d at 383, and in <u>Yulaeva</u>, plaintiffs pled pecuniary

7  loss by alleging that they were "required to pay a referral fee

8  that was prohibited under RESPA."  No. 09-1504, 2009 WL 2990393,

9  at *15.

10          Plaintiffs have not offered any facts to support that

11  AHMSI's failure to respond to their QWR resulted in pecuniary

12  damages.  The closest plaintiffs get to alleging any harm is

13  stating that they "have suffered and continue to suffer damages

14  and costs of suit." (FAC ¶ 101.)  Even under a liberal pleading

15  standard for harm, this level of generality fails.  Accordingly,

16  the court must grant defendant's motion to dismiss this claim.

17          D.  <u>Fraud</u>

18          In California, the essential elements of a claim for

19  fraud are "(a) a misrepresentation (false representation,

20  concealment, or nondisclosure); (b) knowledge of falsity (or

21  'scienter'); (c) intent to defraud, i.e., to induce reliance; (d)

22  justifiable reliance; and (e) resulting damage." <u>In re Estate of</u>

23  <u>Young</u>, 160 Cal. App. 4th 62, 79 (2008).  Under the heightened

24  pleading requirements for claims of fraud under Federal Rule of

25  Civil Procedure 9(b), "a party must state with particularity the

26  circumstances constituting the fraud."  Fed. R. Civ. P. 9(b).

27  The plaintiffs must include the "who, what, when, where, and how"

28  of the fraud.  <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106

1  (9th Cir. 2003) (citation omitted); <u>Decker v. Glenfed, Inc.</u>, 42

2  F.3d 1541, 1548 (9th Cir. 1994).  Additionally, "[w]here multiple

3  defendants are asked to respond to allegations of fraud, the

4  complaint must inform each defendant of his alleged participation

5  in the fraud." <u>Ricon v. Recontrust Co.</u>, No. 09-937, 2009 WL

6  2407396, at *3 (S.D. Cal. Aug. 4, 2009) (quoting <u>DiVittorio v.</u>

7  <u>Equidyne Extractive Indus.</u>, 822 F.2d 1242, 1247 (2d Cir. 1987)).

8       Plaintiffs' fraud allegations do not even come close to

9  surviving a motion to dismiss.  The FAC alleges that AHMSI

10  "misrepresented to [p]laintiffs that [it] has the right to

11  collect monies from [p]laintiffs . . . ."  (FAC ¶ 118.)

12  Plaintiffs also allege that MERS "misrepresented to [p]laintiffs

13  on the Deed of Trust that it is a qualified beneficiary with the

14  ability to assign or transfer the Deed of Trust and/or the Note .

15  . . [and] that it followed the applicable legal requirements to

16  transfer the Note and Deed of Trust . . . ."  (FAC ¶ 119.)

17  Plaintiffs further allege that Power Default "misrepresented to

18  [p]laintiffs that [it] was entitled to enforce the security

19  interest and has the right to institute a non-judicial

20  foreclosure proceeding . . . ."  (<u>Id.</u> ¶ 120.)  Plaintiffs go on

21  to simply state the remaining elements of a cause of action for

22  fraud.  (<u>See</u> <u>id.</u> ¶¶ 121-125.)

23       Even though plaintiffs reincorporate their earlier

24  allegations into this cause of action, plaintiffs do not identify

25  when the alleged misrepresentations by AHMSI or Power Default

26  were made, who made them on behalf of MERS, AHMSI, or Power

27  Default, or why they were false.  In fact, plaintiffs'

28  allegations against Power Default simply sound like an attempt by

                                  12

1  plaintiffs to force Power Default to "produce the Note" to have

2  the right to foreclose on the property.   However, under

3  California law, there is no requirement for the production of the

4  original note to initiate a non-judicial foreclosure.  Kamp v.

5  Aurora Loan Servs., No. SACV 09-00844-CJC(RNBx), 2009 WL 3177636,

6  at *4 (C.D. Cal. Oct. 1, 2009); Oliver v. Countrywide Home Loans,

7  Inc., No. CIV S-0-1381 FCD GGH, 2009 WL 3122573, at *3 (E.D. Cal.

8  Sept. 29, 2009) (citing Alvara v. Aurora Loan Servs., No. C-0-

9  1512 SC, 2009 WL 1689640, at *6 (N.D. Cal. Jun. 16, 2009));

10  Putkkuri v. Recontrust Co., No. 08cv1919 WQH (AJB), 2009 WL

11  32567, at *2 (S.D. Cal. Jan. 5, 2009).   Accordingly, plaintiffs

12  have failed to plead any fraudulent representations by AHMSI,

13  MERS, or Trustee Corps with sufficient particularity.

14         Plaintiffs also do not state how MERS's alleged

15  misrepresentation of its rights as a beneficiary on the Note,

16  AHMSI's claim that it had the right to collect money from

17  plaintiffs, or Power Default's representations of its ability to

18  foreclose on the property harmed them.   Instead plaintiffs make

19  the conclusory statement that they "were harmed and suffered

20  damages."  (FAC ¶ 125.)  At the pleading stage, the complaint

21  "must show a cause and effect relationship between the fraud and

22  damages sought; otherwise no cause of action is stated."  Small

23  v. Fritz Cos., 30 Cal. 4th 167, 202 (2003) (quotations omitted).

24  Without such information it is impossible for the court to

25  determine whether plaintiffs alleged damages "were otherwise

26  inevitable or due to unrelated causes."  Goehring v. Chapman

27  Univ., 121 Cal. App. 4th 353, 365 (2004).  Without pleading facts

28  to explain this causal connection, plaintiffs' cause of action

13

1   must fail.  <u>See</u> <u>Iqbal</u>, 129 S. Ct at 1949.  Accordingly, the court

2   will grant AHMSI, MERS, and Power Default's motion to dismiss

3   plaintiffs' fraud claim.

4          E.   <u>Wrongful Foreclosure</u>

5          Plaintiffs' FAC purports to state a claim for "wrongful

6   foreclosure" against AHMSI and Power Default.  Plaintiffs have

7   failed to produce any common law rule or authority providing for

8   a claim of "wrongful foreclosure" at law.  <u>See</u> <u>Fortaleza v. PNC</u>

9   <u>Fin. Servs. Group, Inc.</u>, --- F.Supp.2d ---, No. C 09-2004 PJH,

10  2009 WL 2246212, at *11 (N.D. Cal. July 27, 2009).  Wrongful

11  foreclosure is an action in equity, where a plaintiff seeks to

12  set aside a foreclosure sale.  <u>See</u> <u>Abdallah v. United Sav. Bank</u>,

13  43 Cal. App. 4th 1101, 1009 (1996); <u>Karlsen v. Am. Sav. & Loan</u>

14  <u>Ass'n</u>, 15 Cal. App. 3d 112, 117 (1971).

15         Plaintiffs attempt to base this claim first on

16  California Commercial Code section 3301, alleging that Trustee

17  Corps was not in possession of the Note, and is not a

18  beneficiary, assignee or employee of the entity in possession of

19  the note, and is therefore not a "person entitled to enforce" the

20  security interest on the property in accordance with section

21  3301. (FAC ¶ 156.)  However, section 3301 reflects California's

22  adoption of the Uniform Commercial Code, and does not govern non-

23  judicial foreclosures, which is governed by California Civil Code

24  section 2924.  <u>See</u> <u>Gaitan v. Mortgage Elec. Registration Sys.</u>,

25  No. EDCV 09-1009 VAP (MANx), 2009 WL 3244729, at *10 (C.D. Cal.

26  Oct. 5, 2009).  "The comprehensive statutory framework

27  established to govern nonjudicial foreclosure sales is intended

28  to be exhaustive."  <u>Moeller v. Lien</u>, 25 Cal. App. 4th 822, 834

1   (1994).  As previously mentioned, there is no requirement for the

2   production of the original Note to initiate a non-judicial

3   foreclosure in California.  <u>Kamp</u>, No. SACV 09-00844-CJC(RNBx),

4   2009 WL 3177636, at *4; <u>Oliver</u>, No. CIV S-0-1381 FCD GGH, 2009 WL

5   3122573, at *3; <u>Putkkuri</u>, No. 08cv1919 WQH (AJB), 2009 WL 32567,

6   at *2.  Therefore, plaintiff cannot assert a claim based on

7   Trustee Corps's failure to comply with an inapplicable commercial

8   code when defendants are not required to "produce the Note"

9   according to California law.

10       Plaintiffs also base their wrongful foreclosure action

11  on the basis of California Civil Code section 2923.5, arguing

12  that  the Notice of Default and Notice of Trustee sale were

13  defective because Trustee Corps did not have the right to

14  foreclose on their property.  (FAC ¶ 159.)  However, this is just

15  a reiteration of plaintiffs' argument that defendants must

16  "produce the Note" to foreclose on their property.  As such, this

17  claim is deficient as a matter of law.  Accordingly, the court

18  will grant AHMSI and Power Default's motion to dismiss

19  plaintiffs' wrongful foreclosure claim.

20       F.   <u>California's UCL</u>

21       California's UCL prohibits "any unlawful, unfair, or

22  fraudulent business act or practice."  <u>Cal-Tech Commc'ns, Inc. v.</u>

23  <u>L.A. Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999).  This cause

24  of action is generally derivative of some other illegal conduct

25  or fraud committed by a defendant, and "[a] plaintiff must state

26  with reasonable particularity the facts supporting the statutory

27  elements of the violation."  <u>Khoury v. Maly's of Cal., Inc.</u>, 14

28  Cal. App. 4th 612, 619 (1993).

15

1    Plaintiffs' claim under the UCL is vague and
2  conclusory, simply alleging that the claims plead against MERS,
3  Power Default, and AHMSI earlier in the complaint demonstrate
4  that defendants engaged in "unlawful, unfair, and/or fraudulent
5  business practices . . . ." (FAC ¶¶ 130, 132-33.)  Plaintiffs do
6  not identify a single specific practice of MERS, AHMSI, or Power
7  Default that they find to be "unfair" or "deceptive" in their
8  cause of action.  The court has already indicated it will dismiss
9  plaintiffs' other causes of action against MERS, AHMSI, and Power
10 Default for failure to state a claim.  Since plaintiffs have
11 failed to state a claim on any of these grounds, and because
12 these grounds appear to be the sole basis for plaintiffs' UCL
13 claim, plaintiffs by necessity have failed to state a claim
14 against the instant defendants under the UCL.  Accordingly, the
15 court will grant MERS, AHMSI, and Power Default's motion to
16 dismiss plaintiffs' UCL cause of action.

17    IT IS THEREFORE ORDERED that AHMSI, MERS, and Power
18 Default's motion to dismiss plaintiffs' First Amended Complaint
19 against AHMSI, MERS, and Power Default be, and the same hereby
20 is, GRANTED.

21    Plaintiffs have twenty days from the date of this Order
22 to file an amended complaint, if they can do so consistent with
23 this Order.

24 DATED:  February 2, 2010

25

26 _____
    WILLIAM B. SHUBB
27  UNITED STATES DISTRICT JUDGE

28

16